UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MONWELL DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01745-TWP-CSW |
| | ) | |
| TRICIA PRETORIUS, | ) | |
| DAVID PLATT, | ) | |
| KEITH HARTZELL, | ) | |
| JACOB SERVIZZI, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Tricia Pretorius, David Platt, Keith Hartzell, and Jason Servizzi (together "Defendants") Motion for Summary Judgment (Dkt. 50) and Motion to Continue FPTC and Jury Trial (Dkt. 58). Also pending are preliminary motions filed by Plaintiff Monwell Douglas ("Mr. Douglas"); that being a Motion for Clarification Concerning Pretrial Scheduling Discovery Correspondence (Dkt. 37) and Motion for extension of time to file Response to Motion for Summary Judgment (Dkt. 54). Mr. Douglas, a former inmate at Plainfield Correctional Facility ("PCF") initiated this action alleging constitutional violations related to asbestos exposure at the PCF gymnasium. (Dkt. 2). After screening his Complaint, the Court allowed Mr. Douglas to proceed with Eighth Amendment deliberate indifference claims and Indiana negligence claims against four defendants. (Dkt. 8). For the reasons explained in this Order, the Defendants' motion for summary judgment is **granted,** the motion for continuance is **denied as moot,** and Mr. Douglas' preliminary motions are **granted in part and denied in part**.

1

## I.   PRELIMINARY MOTIONS

Before Defendants moved for summary judgment, Mr. Douglas filed a Motion for Clarification Concerning Pretrial Scheduling Discovery Correspondence (Dkt. 37) in which he asked the Court to clarify whether he could use any admissions he received from Defendants in discovery in his summary judgment response and he asked the Court to appoint an attorney to assist him. (Dkt. 37). The motion is **granted** to the extent that the Court clarifies that Mr. Douglas is permitted to use discovery in response to a motion for summary judgment. However, his request for counsel is **denied** for the reasons the Court stated in its October 11, 2024, Order denying counsel. *See* Dkt. 18. Applying the standard from *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007), the Court discussed that Mr. Douglas could competently represent himself as he has a bachelor's degree, was able to articulate his claims coherently, was aware of the factual basis for his claims, and could move for extensions of time as needed. *Id.* at 3.

Additionally, the Court finds that it would not have been in the interest of justice to recruit counsel, as this case did not present a particularly close call with respect to whether Defendants acted with deliberate indifference or were negligent. *Watts v. Kidman*, 42 F.4th 755, 766 (7th Cir. 2022) (when weighing the limited resources related to recruitment of counsel, the court may consider the merits of a plaintiff's claim).

Mr. Douglas's motion for extension of time, (Dkt. 54), is **granted** to the extent that the Court has considered his response brief and designated evidence when ruling on Defendants' motion for summary judgment.

## II.   STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### III.    FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Douglas and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

#### A. Parties

Mr. Douglas was an inmate incarcerated at PCF from December 2020 until October 2024. Dkt. 51-1 at 11 (Douglas Dep.). During that time, he was occasionally placed in the gymnasium at

PCF when it was used as temporary housing, and he would use it recreationally for a few hours at a time. *Id*. at 7−10. Mr. Douglas was never assigned to work in the gym. *Id.* at 7.

Defendant Platt was the Recreation Coordinator at PCF. Dkt. 51-2 at 1. Defendant Hartzell was the Deputy Warden at PCF. Dkt. 51-2 at 2. Defendant Pretorius was the warden at PCF. Dkt. 51-2 at 2. Defendant Servizzi served as the Physical Plant Manager at PCF. Dkt. 51-3 at 1. None of the Defendants are trained in the identification, removal, or remediation of potential Asbestos Containing Materials ("ACM") or asbestos. Dkt. 51-2 at 2; dkt. 51-3 at 2.

**B. Identification of Asbestos at PCF**

In early 2022, the heating system in the PCF gym was not operational, and the cold temperatures within the building caused the tiles in the gym to slowly loosen, tile by tile. Dkt. 51-2 at 2. Mr. Platt or inmate employees would remove any loose tiles from the gym floor and place them in a secure, separate room. *Id.* During this time, none of the Defendants were aware that the materials in the gymnasium were potential ACMs. Dkt. 51-2 at 3; dkt. 51-3 at 1.

In May of 2022, PCF executive staff requested an inspection of the gymnasium's floor tiles due to concerns shared by PCF staff members. Dkt. 51-2 at 2-3; dkt. 51-3 at 1-2. The IDOC contracted with a licensed asbestos inspector at August Mack Environmental, Inc. ("August Mack") to conduct a sampling and inspection of PCF's gym tiles. Dkt. 51-3 at 1; dkt. 51-4.

PCF executive staff, including Warden Pretorious and Deputy Warden Hartzell, decided to close the gymnasium in early June 2022 while the inspection results were pending, and the gymnasium remained closed until mid-to-late October 2022. Dkt. 51-3 at 2; dkt. 51-2 at 2.

August Mack emailed the inspection report to Warden Pretorius and others on June 22, 2022. (Dkt. 51-4 at 1). The report confirmed the existence of ACMs in the gymnasium, and noted that "the ACMs identified as part of this survey do not require abatement provided that these

materials are maintained in good condition (or non-friable state), and they will not be disturbed or impacted (rendered friable) by any renovation or operations and maintenance activities." Dkt. 51-4 at 4. August Mack recommended that a plan be developed to monitor the ACMs in good condition until the tiles were removed. *Id.*

Based on the findings in the report, Warden Pretorius took steps to begin the remediation process. (Dkt. 51-3 at 2). While the PCF gymnasium was shut down, an asbestos-certified team came in to remediate the affected area. *Id.* The entire remediation process was undertaken exclusively by outside parties; neither inmates nor PCF staff were involved. *Id.*; dkt. 51-2 at 2. Mr. Platt developed other recreation opportunities for PCF inmates while ensuring they did not access the gym during the remediation process. Dkt. 51-2 at 2. The gymnasium was reopened after August Mack conducted another inspection and confirmed it was safe. *Id.* at 3.

Mr. Douglas testified that he has suffered from headaches and a persistent cough since he was housed at PCF. Dkt. 51-1 at 16-17. When he filled out health care request forms at PCF, healthcare staff would implement a "COVID protocol" wherein they would place him in isolation without providing any other treatment. *Id.* at 18. No medical provider has identified the cause of Mr. Douglas's cough or attributed any of his symptoms to asbestos exposure. *Id.* at 16-20.

## IV.   DISCUSSION

### A.  Eighth Amendment Standard

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an

excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

The Court assumes for purposes of summary judgment that exposure to asbestos at PCF is an objectively serious condition that could pose an excessive risk to Mr. Douglas's health. Defendants argue that Mr. Douglas has failed to present evidence of an injury and that, regardless, there is no evidence that they were deliberately indifferent to a risk of harm.

### i.    Failure to Present Evidence of Injury

The Prison Litigation Reform Act ("PLRA") states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Mr. Douglas testified that he suffers from a cough and headaches, but he also confirmed that no medical professional has attributed those symptoms to asbestos exposure. Dkt. 51-1 at 16-20. Instead, Mr. Douglas has "offered only conclusory allegations" without specifically citing any harm outside of potential future harm. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997) (affirming dismissal of prisoners' Eighth Amendment asbestos exposure claim where they did not show requisite physical injury); *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("Lord's claim fails on the basic proposition that he has

sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury."). Mr. Douglas has failed to present any evidence showing actual injury from the existence of ACMs in the gymnasium at PCF. For this reason, he has failed to meet injury requirement under the Act. *Gibson v. Ramsey*, No. 99 C 5315, 2004 WL 407025, at *7 (N.D. Ill. Jan. 29, 2004). Defendants are entitled to summary judgment on this basis.

### ii.    Deliberate Indifference

Alternatively, even if Mr. Douglas had presented sufficient evidence of injury, he still has not shown that Defendants were deliberately indifferent to the risks of his exposure to asbestos. Once Defendants were aware of the asbestos, they took reasonable steps to prevent inmates from being harmed by it. *Thomas*, 2 F.4th at 720. After Warden Pretorious discovered that there was a possibility of asbestos present in the gym, IDOC staff promptly requested an assessment from a licensed asbestos testing company. Dkt. 51-2 at 2-3, dkt. 51-3 at 1-2. They closed the gym while awaiting the results of the August Mack report, and, once that report confirmed the existence of ACMs, the gym remained closed to PCF inmates and staff while outside parties remediated the issue. Dkt. 51-2 at 2-3; dkt. 51-3 at 2. Absent any evidence that Defendants ignored the risk of exposing Mr. Douglas to asbestos, they are entitled to summary judgment. *See Farmer*, 511 U.S. at 844 (explaining that prison officials "may be found free from liability if they responded reasonably to the risk").[1]

### B.  State Law Negligence Claims

Mr. Douglas's conditions of confinement claims are dismissed, so the Court must decide whether it should exercise supplemental jurisdiction over his state law negligence claims.

---

[1] Because the Court concludes that Defendants did not violate the Eighth Amendment, it need not address their alternative argument that they are entitled to qualified immunity.

The Court has discretion whether to exercise supplemental jurisdiction over a plaintiff's state-law claims when the federal claims have been dismissed. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see also* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "[J]udicial economy, convenience, fairness and comity may point to federal retention of state-law claims ... when it is absolutely clear how the pendent claims can be decided." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 461 (7th Cir. 2020) (internal quotation omitted). That is the case here.

Defendants argue that Mr. Douglas's state law claims are barred by the Indiana Tort Claims Act ("ITCA"), which prohibits lawsuits against state employees for acts taken within the scope of their employment. Ind. Code § 34-13-3-5(b); *see also Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000). Conduct within the "scope of employment" is "conduct of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc.*, 727 N.E.2d at 452. Generally speaking, "whether an employee's actions were within the scope of employment is a question of fact to be determined by the factfinder." *Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020) (internal quotation omitted). But when the facts are undisputed, the Court may decide as a matter of law whether the acts were in the scope of employment. *See id.* (citing *Cox v. Evansville*, 107 N.E.3d 453, 460 (Ind. 2018)).

Here, Mr. Douglas sues the defendants for their response to the presence of asbestos in the gymnasium at PCF. As described above, Defendants took various steps to remediate the asbestos by closing the gymnasium, hiring a professional company to assess the area for the presence of asbestos, and then hiring professionals to remove the ACMs. It is undisputed that all of these acts were taken in the course of their employment. Accordingly, they are entitled to immunity under the ITCA and Defendants' motion for summary judgment is **granted** as to all claims.

## V.    CONCLUSION

Mr. Douglas's Motion for Clarification Concerning Pretrial Scheduling Discovery Correspondence, Dkt. [37] is **GRANTED** in part and **DENIED** in part, and Motion for Extension of Time to Respond to Defendants' Summary Judgment Motion, Dkt. [54], is **GRANTED**. The Court considered his response and affidavit.

Defendants' Motion for Summary Judgment, Dkt. [50], is **GRANTED**. Their motion for Continuance of the Final Pretrial Conference and Jury Trial, Dkt. [58], is **DENIED as moot**.

The **clerk is directed** to update the docket to reflect Defendants' names are Tricia Pretorius, David Platt, and Jason Servizzi.

Final Judgment will issue in a separate order.

**IT IS SO ORDERED.**

Date: 6/24/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

MONWELL DOUGLAS
P.O. Box 6789
Kokomo, IN 46904

All Electronically Registered Counsel